IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION II

| | |
|---|---|
| CROSSROADS MANAGEMENT, LLC, | No. 55641-3-II |
| Plaintiff, | (consolidated with No. 56315-1-II |
| v. | |
| LACY K. RIDGWAY (formerly LACY CALDWELL) and MATTHEW RIDGWAY, husband and wife, | UNPUBLISHED OPINION |
| Respondent/Cross-Appellant, | |
| CARL and SUZAN LEWIS, husband and wife, | |
| Appellant/Cross-Respondent. | |

GLASGOW, C.J.—After tenants Carl and Suzan Lewis moved out of a rental property owned by Lacy and Matthew Ridgway, the parties disagreed about the amount of security deposit that should be returned to the Lewises. Because the Lewises demanded a full refund of their deposit and the Ridgways insisted that most of the deposit be put toward repairing damage to the property, the property management company, Crossroads Management LLC, filed an interpleader action and placed the $1,695 security deposit in the court's registry.

The Lewises filed a cross claim against the Ridgways, arguing in part that they were entitled to attorney fees and double damages under RCW 59.18.280(2) because the Ridgways intentionally withheld the full refund due in violation of RCW 59.18.280(1). The Ridgways filed a motion for partial summary judgment on this issue, arguing RCW 59.18.280(1) only requires the landlord to mail a statement of damages and/or a refund within 21 days and they complied with

this requirement. The trial court agreed that RCW 59.18.280 requires timely communication, not necessarily an accurate return of the deposit owed, and granted the partial summary judgment motion. We denied a motion for discretionary review of this decision.

The Ridgways made multiple settlement offers, including one that exceeded the amount of the full security deposit by over $1,000. The Lewises refused all offers of settlement, and the parties proceeded to mandatory arbitration under chapter 7.06 RCW. The arbitrator awarded the Lewises their full $1,695 security deposit but awarded the Ridgways $14,386 in attorney fees under chapter 4.84 RCW, which establishes a risk-shifting mechanism for cases with under $10,000 in controversy where the defendant offered more to settle the case than the plaintiff ultimately recovered.

The Lewises then filed a request for trial de novo. The Ridgways moved to strike the request because it was not signed by the Lewises themselves, as required by RCW 7.60.050(1) and SCCAR 7.1(b). The trial court found that the Lewises had substantially complied with statutory and court rule requirements and denied the Ridgways' motion, as well as a motion for reconsideration.

At the trial de novo, a jury determined that the Lewises were entitled to a full refund of their security deposit. But the trial court maintained the $14,386 attorney fee award from the arbitrator and awarded the Ridgways an additional approximately $13,000 in attorney fees based on the Lewises' failure to improve their position on the trial de novo.

The Lewises appeal the trial court's order granting the Ridgways' motion for partial summary judgment and the attorney fee awards. They also appeal an order disbursing the funds

held in the court registry to the Ridgways. The Ridgways appeal the trial court order denying their motion to strike the trial de novo request and the order denying their motion for reconsideration.

We hold the trial court erred when it found that the Lewises substantially complied with the requirements for requesting trial de novo and denied the Ridgways' motions to strike and for reconsideration. Following Division One, we conclude the plain language of both RCW 7.60.050(1) and SCCAR 7.1(b) required the aggrieved party's signature on the request for trial de novo. The Lewises failed to meet this requirement.

We therefore reverse the trial court's order denying the Ridgways' motion to strike the Lewises' trial de novo request, affirm the amended arbitration award, and remand for further proceedings consistent with this opinion. Because review of adverse rulings in mandatory arbitration proceedings must occur by trial de novo, the failure to properly seek trial de novo should have ended the proceeding, and we do not review the merits of the Lewises' claims on appeal. On remand, the trial court must determine the proper amount of attorney fees to be awarded to the Ridgways for proceedings in the trial court in light of this opinion. We award the Ridgways reasonable attorney fees on appeal in an amount to be determined by a commissioner of this court.

FACTS

I. BACKGROUND

The Lewises moved into a single family home owned by the Ridgways in May 2015. They paid a refundable security deposit of $1,695 and completed a checklist noting the condition of the property when they moved in. The lease stated that after "deductions for cleaning and repairs necessary to restore the premises to its original condition (less allowance for reasonable wear and tear), . . . the balance of the security fee shall be refunded," provided there is no evidence of

unapproved pets or unauthorized smoking and "all grounds are cleared." Clerk's Papers (CP) at 16. The Lewises were permitted to have pets.

Crossroads managed the Ridgways' rental property. As part of its responsibilities, Crossroads was required to manage security deposits. It held the Lewises' $1,695 deposit in a trust account.

On May 22, 2018, the Lewises moved out. Carl Lewis did a final walk-through of the property with a representative from Crossroads, Calvin Smith, who remarked that the condition of the property was the same as when the Lewises moved in, except for one issue with light fixtures. Smith noted this on a copy of the move-in checklist, and both he and Carl Lewis signed the checklist. The carpets had just been cleaned, and there were no odors of smoke or stains. Suzan Lewis took pictures upon moving out of the home, which are in our record and which show newly cleaned carpets. The Lewises handed over their keys, and Smith told them their full security deposit would be returned. He classified any issues with the wall paint as "normal wear-and-tear." CP at 240.

A few days later, on May 26, the Ridgways visited the property and alleged that they discovered "a heavy lingering smell of cigarette smoke," "a few cigarette butts . . . inside on the floor," "smoke stains on the walls and animal urine stains on the carpets, which did not appear to have been cleaned." CP at 66. Lacy Ridgway said the Lewises were "openly admitted smokers" and had two dogs. CP at 279. Ridgway also complained that the Lewises tore a toilet paper holder from the wall, installed satellite dishes and failed to remove them, and left the yard overgrown and with garbage in it. And "the move-out checklist did not reflect any of these issues." *Id.*

4

The Ridgways also took pictures, which are in our record. Their pictures show damage to a baseboard and a carpet stain, damage to a toilet paper holder, and pictures of the condition of the yard. On June 10, the Ridgways sent Crossroads detailed accounts of these damages and others, reported that the repairs would cost $1,536.01 (including repainting and yard work), and asked Crossroads to promptly inform the Lewises that most of their deposit was being withheld to cover these costs.

In response, Crossroads asked the Ridgways whether anybody else could have been in the home after the Lewises moved out. Smith insisted, "During the walk-through, there were no cigarette butts and no cigarette odor. We are quite sensitive to odors from smokers, and there were *no odors* upon the walk-through on the 22nd, when keys were handed over to us." CP at 32. However, Smith did notice the smell when he returned to show the house to new tenants.

As for the carpet stains, Smith stated that the carpets were "cleaned when the tenants left" but acknowledged that they "were very dirty the next time [he] came to the house." *Id.* Lacy Ridgway said "a dog was in the house that soiled a few spots on the floor," which Smith thought happened after the Lewises moved out. *Id.* According to Smith, the pictures of the damages from the Ridgways did not match the condition of the home when the Lewises moved out. He advised the Ridgways to return the full security deposit and told them, "Just a warning: if you believe the past tenants should be charged for somebody else's carelessness, you could be in for a lawsuit from the past tenant." CP at 33.

Nevertheless, Crossroads complied with the Ridgways' request and issued a check for $158.99 to Carl Lewis on June 12, along with the summary of damages and itemization of the cost of repairs provided by the Ridgways.

5

On June 26, the Lewises returned this check and demanded a full refund of their deposit, noting that they did not timely receive the full breakdown of the alleged damages and that during the final walk-through, Smith "stated that everything was good and that [the Lewises] would get [their] deposit back." CP at 40.

Crossroads filed a complaint in interpleader, depositing the $1,695 from its trust account into the court's registry and asking the court to determine who was entitled to it.

## II. CROSS CLAIM AND PARTIAL SUMMARY JUDGMENT

The Lewises filed a cross claim against the Ridgways, alleging that the damages listed were "either cleared on final inspection or not addressed in the initial inspection and therefore not a proper basis for charge." CP at 45. The Lewises asserted they were entitled to the full amount of the security deposit, as well as attorney fees and double damages, because the Ridgways intentionally and wrongfully withheld the deposit that was due to them under RCW 59.18.280.

In early November 2018, the Ridgways sent a letter to counsel for the Lewises, stating they were advised by an attorney to pay the Lewises the full security deposit and move to dismiss the case with prejudice. They never received a response.

In late November, the Ridgways' attorney sent a formal offer to settle the case for $1,800. The Lewises rejected this offer, declined to make a counteroffer, and advised they would entertain a "reasonable settlement offer" that included the full deposit *and* reimbursement of attorney fees. CP at 425.[1] A subsequent offer of $2,800, including $1,000 specifically to address costs and fees, was also rejected.

---

[1] The Lewises also asserted that the Ridgways' offer failed to comply with the timeline requirements of CR 68 because they were given 3 days to respond instead of 10. CR 68 addresses

In March 2019, the Ridgways moved for partial summary judgment, arguing they did not violate RCW 59.18.280, so the Lewises' damages should be capped at the amount of the security deposit. The trial court granted the Ridgways' motion for partial summary judgment, holding they had complied with the timing requirements of RCW 59.18.280. Accordingly, there would be no basis, as a matter of law, for awarding the Lewises damages in an amount up to double the amount of their security deposit. The trial court capped the available damages at the amount of the deposit, $1,695.

The Lewises sought discretionary review of this ruling, which this court denied. The Lewises then filed a motion for summary judgment, arguing that based on undisputed facts, they were entitled to a refund of the full security deposit. The trial court denied the motion.

### III. ARBITRATION AND TRIAL DE NOVO

Because the Lewises sought a money judgment for less than $100,000, they filed a statement of arbitrability. *See* RCW 7.06.020(1) ("All civil actions, . . . where the sole relief sought is a money judgment, and where no party asserts a claim in excess of . . . up to one hundred thousand dollars, exclusive of interest and costs, are subject to civil arbitration."). After a hearing, the arbitrator entered an award of $1,695 for the Lewises, which represented the full amount of their security deposit.

The Ridgways then filed a motion for attorney fees under chapter 4.84 RCW, asserting they were the prevailing party based on the statutory risk-shifting scheme for small claims. "The defendant, or party resisting relief, shall be deemed the prevailing party within the meaning of

---

offers of judgment, but the Ridgways were not making an offer of judgment. *See* CP at 422 (offering "to settle this matter pursuant to RCW 4.84.280").

RCW 4.84.250, if the plaintiff, or party seeking relief in an action for damages [amounting to $10,000 or less], recovers . . . the same or less than the amount offered in settlement by the defendant." RCW 4.84.270. The Ridgways notified the arbitrator that the Lewises failed to recover more than what the Ridgways offered to settle the case—$2,800—making the Ridgways the prevailing party under chapter 4.84 RCW. The Lewises did not file a motion for fees or costs, insisting the case was not yet over. The arbitrator entered an amended arbitration award, maintaining the award of $1,695 for the Lewises but awarding $14,386 in attorney fees for the Ridgways.

The Lewises wanted to appeal this fee award and the trial court's partial summary judgment ruling. On August 13, 2020, they filed a trial de novo request, believing they could not appeal to this court without first pursuing trial de novo. They also told the Ridgways that they would settle if the Ridgways paid them $8,885.

The Ridgways moved to strike the trial de novo request because it was signed only by the Lewises' counsel, not the Lewises themselves, as required by statute and court rule. *See* RCW 7.06.050(1) ("The notice *must* be signed by the party." (emphasis added)); SCCAR 7.1(b) (same); Suppl. Clerk's Papers (SCP) at 600 (trial de novo request signed only by the Lewises' counsel). In response, Carl Lewis submitted a declaration asserting, "We told our attorney to ask for a trial de novo." SCP at 648. A paralegal from counsel's law firm also submitted a declaration, explaining that they had downloaded the trial de novo request form from the Pierce County Superior Court LINX[2] website. "Notably, the Court's e-form [for direct filing] contains no signature blocks for

---

[2] LINX is the Legal Information Network Exchange.

the Lewises." SCP at 650. The court's Adobe version of the form, which the paralegal decided to use, included a single signature block that "requires the Washington State Bar Association number of the person signing it, which indicate[d to the paralegal] that the person signing it needs to be an attorney." SCP at 651.

The Ridgways acknowledged that Pierce County's form appeared to be "outdated" but argued this did not "justify a party's failure to comply with statute and court rules." SCP at 666 n.1. LINX gives parties the option to upload their own form, and that option allows the party to be "in control of [the form's] contents." SCP at 669.

The trial court denied the motion to strike the trial de novo request, noting "a problem with the LINX system," and concluded that the Lewises had "made timely effort[s]" and acted "in good faith" when filing their request. SCP at 674.

The Ridgways moved for clarification. In response, the Lewises proposed certifying the issue of interpreting RCW 7.06.050(1) and SCCAR 7.1(b) to this court, along with the issue of interpreting RCW 59.18.280(2)'s double damages provision. The trial court explained that it had found "substantial compliance" with the trial de novo statute and court rule, as well as "good faith," because the county's failure to update its online form resulted in the parties having "no ability to comply" fully with the requirements for submission. Verbatim Report of Proceedings (Sept. 25, 2020) at 4. The trial court declined to certify any issues for interlocutory appeal.

The Ridgways then filed a motion for reconsideration of the trial court's order denying their motion to strike the trial de novo request, arguing in part that other judges in Pierce County, Snohomish County, and Thurston County had been presented with the same issue and struck

requests for trial de novo that were not signed by the aggrieved parties. The trial court denied the motion for reconsideration.

After a trial de novo, a jury found the Lewises were entitled to a return of their full security deposit. The issue of attorney fees was not before the jury.

The trial court entered a judgment awarding the Lewises the $1,695 deposit, plus $200 in attorney fees and approximately $510 in costs. It preserved the arbitrator's fee award of $14,386 in attorney fees for the Ridgways, and it added an additional approximately $13,000 in fees for the Ridgways from the trial de novo based on the Lewises' failure to improve their position from arbitration. In total, it awarded the Ridgways over $27,000 in attorney fees and costs under RCW 4.84.250 and 7.06.060.

The Ridgways then moved to disburse the $1,695 from the court's registry in partial satisfaction of this judgment. The Lewises opposed the motion, arguing that this was an improper process for obtaining payment on the judgment because the Ridgways did not prevail on the merits of the security deposit claim. The trial court granted the Ridgways' motion.

The Lewises appeal the partial summary judgment ruling, order awarding the Ridgways reasonable costs and attorney fees, and order to disburse funds from the court registry to the Ridgways in partial satisfaction of judgment. The Ridgways cross appeal the trial court's order denying their motion to strike the request for trial de novo and order denying their motion for reconsideration.

ANALYSIS

TRIAL DE NOVO REQUEST

Because it is dispositive, we begin with the Ridgways' cross appeal of the trial court's order denying their motion to strike the Lewises' trial de novo request. The applicable statute and court rule required a signature from the Lewises themselves, but the Lewises' request was signed only by their attorney. The Ridgways therefore prevail on their cross appeal.

A.      Party Signature Requirement

We review a trial court's interpretation of statutes and court rules de novo. *Mangan v. Lamar*, 18 Wn. App. 2d 93, 96, 496 P.3d 1213 (2021). We interpret both statutes and court rules by looking first to the plain meaning as an expression of intent. *Hanson v. Luna-Ramirez*, 19 Wn. App. 2d 459, 461, 496 P.3d 314 (2021). If the language is "plain and unambiguous, our inquiry ends." *West v. Dep't of Fish & Wildlife*, 21 Wn. App. 2d 435, 441, 506 P.3d 722 (2022).

A civil damages action seeking a money judgment of $100,000 or less is subject to mandatory arbitration in some counties. *See* RCW 7.06.020(1). After an arbitration hearing, the arbitrator files their decision with the court clerk. RCW 7.06.050(1). "Within twenty days after such filing, any aggrieved party may file with the clerk a written notice of appeal and request for a trial de novo in the superior court on all issues of law and fact. *The notice must be signed by the party*." *Id.* (emphasis added). The legislature added the express requirement that the notice be signed by the aggrieved party in 2018. *See* ENGROSSED H.B. 1128, 65th Leg., Reg. Sess., § 6 (Wash. 2018). Its use of the word "must" plainly indicates that the legislature intended for this requirement to be mandatory.

The Washington Supreme Court adopted a similar change to the related Superior Court Civil Arbitration Rule that became effective in December 2019. *See Hanson*, 19 Wn. App. 2d at 462. SCCAR 7.1(b), available on the Washington Courts website, provides a sample trial de novo request form, which includes a separate signature line specifically for the "aggrieved party." It requires the trial de novo request to be "substantially in the form set forth" by the rule. SCCAR 7.1(b). And like the corresponding statute, SCCAR 7.1(b) states expressly that the request "*must* be signed by the party." (Emphasis added.) Division One recently recognized that this amendment to the court rule reflected the new statutory requirement of an aggrieved party's signature—the "signature of that party's attorney alone is not sufficient." *Hanson*, 19 Wn. App. 2d at 462.

Here, it is undisputed that the Lewises did not sign the trial de novo request form. Their request was filed in August 2020, well after these amendments went into effect, and it was signed only by their attorney, which "alone is not sufficient." *Id.* The Lewises failed to comply with the express requirements of RCW 7.06.050(1) and SCCAR 7.1(b), although they could have done so by drafting and uploading their own request form. Given the plain mandate of the applicable statute and court rule, the trial court here did not have discretion to deny the Ridgways' motion to strike the trial de novo request. It also erred in denying their motion for reconsideration. Accordingly, we reverse the trial court's order denying the Ridgways' motion to strike the Lewises' trial de novo request.

B.      Limitations on Appellate Review of Mandatory Arbitration Proceedings

The Supreme Court has held that "the sole way to appeal an erroneous ruling from mandatory arbitration is the trial de novo." *Malted Mousse, Inc. v. Steinmetz*, 150 Wn.2d 518, 529, 79 P.3d 1154 (2003). "A judgment that is entered on a mandatory arbitration award is generally not subject to direct appellate review." *Dill v. Michelson Realty Co.*, 152 Wn. App. 815, 820, 219 P.3d 726 (2009).

In *Malted Mousse*, the party seeking trial de novo filed an "ineffective" request when they sought "relief outside the trial court's jurisdiction." 150 Wn.2d at 534-35. Specifically, the party attempted to obtain a partial trial de novo, challenging only the arbitrator's determination of attorney fees and not the underlying judgment. *Id.* at 534. But RCW 7.06.050(1) provides for trial de novo on "*all* issues of law and fact." (Emphasis added.) The trial de novo must be "conducted as if the parties had never proceeded to arbitration." *Malted Mousse*, 150 Wn.2d at 528.

Under *Malted Mousse*, if a party files an ineffective trial de novo request and fails to file a proper request within the 20-day window, they "can no longer seek review by trial de novo." *Id.* at 535. Because there is no other path to appellate review of an adverse decision under chapter 7.06 RCW, when a party fails to timely file a proper request and can no longer seek review by trial de novo, we must affirm the preexisting arbitration award. *See id.*; *cf. Clark County v. Growth Mgmt. Hr'gs Bd.*, 10 Wn. App. 2d 84, 96-98, 448 P.3d 81 (2019) (dismissing petitions for judicial review under the Administrative Procedure Act, chapter 34.05 RCW, where the parties' failures to comply with statutory requirements for service deprived this court of appellate jurisdiction).

Here, the only trial de novo request that was timely filed failed to comply with the plain requirements of the applicable statute and court rule. The trial court should have considered this

filing to be an ineffective request, and the trial de novo in this case should not have occurred. Therefore, we do not consider the merits of the Lewises' argument regarding the application of RCW 59.18.280 on appeal. We must affirm the amended arbitration award entered prior to the trial de novo and remand for further proceedings consistent with this opinion.[3]

## ATTORNEY FEES

A.    Attorney Fees Below

Because the trial de novo request was ineffective, the amended arbitration award is the final decision on the merits in this case. Accordingly, we affirm that award, including the costs and attorney fees awarded to the Ridgways for the arbitration proceedings. On remand, the trial court may also award additional fees for the trial de novo proceedings in its discretion.

In Washington, a party may recover reasonable attorney fees when provided by statute. *Bloor v. Fritz*, 143 Wn. App. 718, 746-47, 180 P.3d 805 (2008). A party's entitlement to such fees is "a question of law that we review de novo." *Id.* at 747. What award is reasonable is a matter of trial court discretion. *Id.*

If an aggrieved party appeals an arbitration award and fails to improve their position on a trial de novo, the court shall assess costs and reasonable attorney fees against them. RCW 7.06.060(1); SCCAR 7.3. This rule encompasses those who fail to improve their position because

---

[3] For the first time in their reply brief, the Lewises contend that they are entitled to review of the trial court's partial summary judgment ruling, regardless of whether they properly invoked trial de novo, because the partial summary judgment ruling resulted in a defect inherent in any subsequent judgment. We typically do not address arguments made for the first time in reply, in part because the other party has had no opportunity to respond. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992). Moreover, the Lewises did not appeal the subsequent arbitration award. *See* Notices of Appeal.

they failed to comply with the procedural requirements for proceeding to trial de novo. *Wiley v. Rehak*, 143 Wn.2d 339, 348, 20 P.3d 404 (2001).

When awarding attorney fees, the trial court should use its broad discretion to determine what award is truly reasonable under the specific circumstances of each case. "'Courts must take an active role in assessing the reasonableness of fee awards, rather than treating cost decisions as a litigation afterthought. Courts should not simply accept unquestioningly fee affidavits from counsel.'" *Singh v. Zurich Am. Ins. Co.*, 5 Wn. App. 2d 739, 760-61, 428 P.3d 1237 (2018) (quoting *Mahler v. Szucs*, 135 Wn.2d 398, 434-35, 957 P.2d 632, 966 P.2d 305 (1998)). "The trial court must create an adequate record for review of fee award decisions, which means in part that the record must show a tenable basis for the award." *Loeffelholz v. Citizens for Leaders with Ethics and Accountability Now (C.L.E.A.N.)*, 119 Wn. App. 665, 690, 82 P.3d 1199 (2004) (footnote omitted).

Here, the Lewises filed a request for trial de novo because they correctly believed that proceeding to trial de novo was the only remaining way to obtain review of the trial court's partial summary judgment order. The proceedings in the trial court resulted in significant additional legal fees for both parties. And because they failed to comply with the procedural prerequisites for requesting trial de novo, the Lewises fail to improve their position.

We therefore remand for the trial court to consider in its discretion what award is reasonable for costs and attorney fees the Ridgways incurred in the trial court under the circumstances of this case. The trial court must explain its decision on the record.

B.    Disbursement of Funds from Court Registry

After this appeal was filed, the trial court issued an order disbursing the interpleaded funds to the Ridgways in partial satisfaction of the attorney fee award. The Lewises submitted a supplemental opening brief to this court, arguing that the interpleaded funds should have been disbursed to them because they succeeded on the merits of the security deposit claim and that the Ridgways were required to engage in a supplemental process to satisfy their judgment.

We recognize that a tenant's "security deposit is the tenant's personal property." *Silver v. Rudeen Mgmt. Co.*, 197 Wn.2d 535, 549, 484 P.3d 1251 (2021). It does not become the landlord's property unless and until the tenant breaches the rental agreement. *Id.* However, we also recognize that when funds are deposited into the court's registry, the court obtains "the authority and the duty to distribute the funds to the party or parties who show themselves entitled thereto." *Pac. Nw. Life Ins. Co. v. Turnbull*, 51 Wn. App. 692, 699, 754 P.2d 1262 (1988). We have previously determined it is within the trial court's discretion to award attorney fees first and damages second. *See id*. at 698-700. The Lewises have not identified a new rule of law that persuades us doing so was an abuse of the trial court's discretion.

C.    Attorney Fees on Appeal

The Lewises briefly request attorney fees on appeal under RCW 59.18.280 and RAP 18.1. RCW 59.18.280(2) provides for costs and reasonable attorney fees to the "prevailing party" in a tenant's action to recover a security deposit. Because we do not review the merits of their claim under RCW 59.18.280 on appeal, the Lewises cannot be a prevailing party under this statute.

The Ridgways request attorney fees on appeal under RCW 4.84.290, governing damages actions of $10,000 or less, and RCW 7.06.060 and SCCAR 7.3, governing fees for a trial de novo.

RCW 4.84.290 provides that "if the prevailing party on appeal would be entitled to attorneys' fees under the provisions of RCW 4.84.250, the court deciding the appeal shall allow to the prevailing party such additional amount as the court shall adjudge reasonable as attorneys' fees for the appeal." We may also award attorney fees on appeal where the opposing party fails to improve their position from the arbitration proceedings. *See Wiley*, 143 Wn.2d at 348 (citing RCW 7.06.060 and former MAR 7.3 (1993)).

The Ridgways have prevailed on their cross appeal of the trial court's order denying their motion to strike the Lewises' trial de novo request. And they were the prevailing party under RCW 4.84.250 because after arbitration, the Lewises had recovered "the same or less than the amount offered in settlement by" the Ridgways. RCW 4.84.270. Moreover, the Lewises failed to improve their position from arbitration. Accordingly, we award the Ridgways reasonable attorney fees on appeal in an amount to be determined by our commissioner.

## CONCLUSION

We reverse the trial court's order denying the Ridgways' motion to strike the Lewises' trial de novo request, affirm the amended arbitration award, and remand for further proceedings consistent with this opinion. On remand, the trial court must determine the proper amount of costs and attorney fees to be awarded to the Ridgways for proceedings in the trial court in light of this opinion. We award the Ridgways reasonable attorney fees on appeal in an amount to be determined by a commissioner of this court.

No. 55641-3-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_Glasgow, CJ_

Glasgow, C.J.

We concur:

_Cruser, J._

Cruser, J.

_Price, J._

Price, J.